[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 5, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15027
Non-Argument Calendar
_____

D. C. Docket No. 04-02403-CV-CC-1

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

PETER WARREN,

Defendant-Appellant,

EXO-BRAIN, INC.,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 5, 2008)**

Before MARCUS, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

The Securities and Exchange Commission sued Peter Warren and his company Exo-Brain Inc. for violating the federal securities laws, including the 1933 and 1934 Acts. Distilled to its essence, the complaint alleges that Warren sold $6.4 million of unregistered securities in Exo-Brain's predecessor by fraudulently representing to investors that he was developing new voice-recognition computer technology. The parties agreed to a consent order which stipulated (i) that Warren would pay a civil penalty, disgorgement, and pre-judgment interest, and (ii) that for purposes of determining these liabilities, the allegations in the SEC's complaint would be deemed true. But the order did not stipulate the amount of liability, which was to be determined later by the court. The consent order also provided that if Warren furnished a sworn statement that he was unable to pay, the SEC could, in its discretion, elect to waive his liability.

Warren submitted a financial statement to the SEC in June 2005 which showed that he had assets, including over $150,000 in real estate equity and approximately $10,000 in monthly income. After months of procedural wrangling, the details of which are not pertinent here, Warren submitted another financial statement in April 2006, which again stated that Warren had assets and income in a similar amount. Despite these two statements, Warren also persistently claimed his

2

liability should be waived because he was unable to pay any judgment.

Unsurprisingly, the SEC did not grant Warren's request for a waiver, and in

September 2006 moved for summary judgment as to the amount of liability.  The

court granted summary judgment for the SEC in September 2007, ordering

disgorgement of $6.4 million (the amount Warren and his company received in

unlawful transactions), pre-judgment interest of $1,981,734.50, and a $75,000 civil

penalty.

On appeal, Warren contends summary judgment was erroneously entered.

We review the entry of summary judgment de novo, but the amount of a monetary

remedy under the securities laws is reviewed for abuse of discretion.  See, e.g.,

SEC v. Diversified Corp. Consulting Grp., 378 F.3d 1219, 1228 (11th Cir. 2004).

Warren essentially argues that because consent orders are interpreted like

contracts, SEC v. ETS Payphones, Inc., 408 F.3d 727, 736 (11th Cir. 2005)

(citation omitted), the SEC had an obligation to exercise in good faith its discretion

to waive penalties.  See generally Restatement (Second) of Contracts § 205 (duty

of good faith and fair dealing).  Warren contends that the SEC acted in bad faith by

ignoring the affidavits and financial statements which purportedly established his

inability to pay, thereby "breaching" the "contract."[1]  Further, he argues, the

---

[1] If Warren is correct that the SEC acted in bad faith and had an obligation not to do so, it is unclear whether the appropriate remedy would be vacatur of the consent order, or a

3

district court erred by granting summary judgment for the SEC in the face of a disputed factual issue, created by his affidavits and financial statements, concerning (i) his ability to pay and (ii) the SEC's good faith in electing not to waive penalties after he protested that he could not pay.

Warren's argument that reversal is warranted because he cannot pay a judgment sorely misses the mark. First, nothing in the securities laws expressly prohibits a court from imposing penalties or disgorgement liability in excess of a violator's ability to pay.[2] Rather, upon producing a reasonable approximation of a defendant's ill-gotten gains, the Commission is entitled to disgorgement in that amount, SEC v. Calvo, 378 F.3d 1211, 1217 (11th Cir. 2004), and with respect to penalties, the Commission need only make "a proper showing" that a violation has occurred and a penalty is warranted. 15 U.S.C. §§ 77t(d) (1933 Act); 78u(d)(3) (1934 Exchange Act). Moreover, Warren cites no decisional law stating that the securities laws impliedly prohibit a district court from imposing penalties or disgorgement in excess of a violator's ability to pay, and we have located none. At most, ability to pay is one factor to be considered in imposing a penalty. And while discretion may be abused when a district court refuses to consider a fact that

declaration that the SEC, having violated the order, may not enforce its liability provisions. Either way, Warren has not shown error.

[2] A contrary rule would allow con artists to escape disgorgement liability by spending their ill-gotten gains – an absurd result.

should be given significant weight, see Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005), it is apparent that no such error occurred here because Warren's ability to pay does not merit significant weight in comparison to the other equities.  Because disgorgement was imposed in the amount of proceeds Warren received from unlawful transactions, and because a civil penalty was warranted by Warren's concededly fraudulent conduct, there would be no abuse of discretion even assuming that Warren is unable to pay the judgment imposed.

Second, even if an inability to pay was decisive, the evidence Warren relies upon – his financial affidavit – does not establish a factual dispute precluding imposition of these liabilities on summary judgment.  Assuming without deciding that the district judge should have considered and credited the financial affidavit, it establishes exactly the opposite of what Warren contends: not that he was impoverished and unable to pay a substantial judgment, but to the contrary that he had assets and regular income.

Warren's argument that he created a factual dispute concerning the SEC's good faith fares even worse.  Assuming arguendo that the SEC had an obligation under the consent order to consider Warren's financial affidavit in good faith when deciding whether to waive penalties, there is no genuine dispute that it did so.

5

Rather, the financial affidavits submitted by Warren to the SEC conclusively establish a good faith basis in fact for determining that Warren could pay a substantial judgment. In other words, far from supporting an inference of bad faith by the SEC in seeking a judgment, the financial affidavits support an inference of good faith, because they establish that Warren is not impecunious. Because Warren relied solely on the financial affidavits to establish a factual dispute concerning the SEC's good faith, it follows that no such dispute has been established.[3]

**AFFIRMED.**

---

[3] There is a strong argument that Warren would bear the burden of persuasion concerning his allegations of bad faith, but because we conclude he did not create a genuine dispute of fact about this issue, we need not decide which party bears the ultimate burden of persuasion.