11-5124-cv
*SEC v. Rajaratnam*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2018

Argued: November 2, 2018     Decided: March 5, 2019

Docket No. 11-5124-cv

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

— v. —

RAJ RAJARATNAM,

*Defendant-Appellant,*

GALLEON MANAGEMENT, LP, ALI HARIRI, RAJIV GOEL, ANIL KUMAR, DANIELLE CHEISI, MARK KURLAND, ROBERT MOFFAT, NEW CASTLE FUNDS LLC, ROOMY KHAN, DEEP SHAH, ALI T. FAR, CHOO-BENG LEE, FAR & LEE LLC, SPHERIX CAPITAL LLC, ZVI GOFFER, DAVID PLATE, GAUTHAM SHANKAR, SCHOTTENFIELD GROUP LLC, STEVEN FORTUNA, S2 CAPITAL MANAGEMENT, LP,

*Defendants.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as listed above.

B e f o r e:

RAGGI, LYNCH, and DRONEY, *Circuit Judges*

————————

Defendant-Appellant Raj Rajaratnam appeals from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*), ordering him to pay a civil penalty of almost $93 million in a civil suit brought by the Securities and Exchange Commission. Rajaratnam argues that the district court committed legal error in interpreting Section 21A of the Securities Exchange Act as allowing a civil penalty based on profits from trades Rajaratnam illegally executed but from which he did not personally profit. Rajaratnam also argues that the district court abused its discretion by failing to consider Rajaratnam's criminal punishment and by improperly considering Rajaratnam's wealth in determining the amount of the civil penalty. The order of the district court is AFFIRMED.

————————

DAVID LISITZA, Senior Litigation Counsel, Securities and Exchange Commission, Washington, D.C., (Michael A. Conley, Deputy General Counsel, Jacob H. Stillman, Solicitor, Randall W. Quinn, Assistant General Counsel, Paul G. Alvarez, Senior Counsel, Securities and Exchange Commission, Washington, D.C., *on the brief*) *for Plaintiff-Appellee.*

SAMIDH GUHA, Jones Day, New York, NY (Meir Feder, Ian Samuel, Jones Day, New York, NY, *on the brief*) *for Defendant-Appellant.*

————————

GERARD E. LYNCH, *Circuit Judge*:

In this civil action, filed in the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*), the Securities and Exchange Commission ("SEC") charged defendant-appellant Raj Rajaratnam with insider trading conduct for which he was criminally prosecuted by the United States Department of Justice. *See United States v. Rajaratnam*, 09 Cr. 1184 (S.D.N.Y. Holwell, *J.*). After Rajaratnam's conviction following trial, the SEC moved for summary judgment in the civil case. As part of its requested relief, the SEC sought a civil penalty pursuant to Securities Exchange Act Section 21A, 15 U.S.C. § 78u-1, which permits the district court to assess a penalty upon a person who engages in insider trading in an amount "not to exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or communication." *Id*. at (a)(2). After extensive argument regarding the appropriate amount of the penalty, the district court entered judgment against Rajaratnam, imposing a civil penalty of $92,805,705, the maximum permissible under the statute. Rajaratnam now challenges that award. For the reasons that follow, we AFFIRM the judgment of the district court.

## BACKGROUND

Rajaratnam was the managing general partner and portfolio manager of Galleon Management, LP, a registered investment adviser, and its affiliated multi-billion dollar group of hedge funds (collectively, "Galleon"). In 2011, Rajaratnam was indicted in the Southern District of New York on nine counts of substantive securities fraud under Securities Act Section 17(a), Exchange Act Section 10(b), and Exchange Act Rule 10b-5, based on his insider trading in the stock of five different companies, and five counts of conspiracy to commit insider trading.

On the day that Rajaratnam was arrested, the SEC filed a parallel civil complaint, also in the Southern District of New York, charging Rajaratnam with the same insider trading conduct alleged in his criminal case. Specifically, the SEC alleged, among other things, that Rajaratnam's purchases and sales of stock in certain companies on the basis of material nonpublic information violated Securities Act Section 17(a), 15 U.S.C. § 77q(a), Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 18 C.F.R. § 240.10b-5. The SEC sought an injunction against further securities law violations, disgorgement of ill-gotten gains from the violations (plus prejudgment interest), and a civil monetary

4

penalty under Exchange Act Section 21A, 15 U.S.C. § 78u-1 ("Section 21A").

Subsection (a)(1) of Section 21A authorizes the SEC to bring a civil action against a person who violates the insider trading laws. Subsection (a)(2) concomitantly authorizes the district court to impose a civil penalty "on the person who committed such violation" in an amount to be determined by the district court "in light of the facts and circumstances," but stipulates that such penalty "shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or communication." The SEC's case before Judge Rakoff proceeded on a track parallel to the criminal case, before then-Judge Holwell.

After an eight-week trial in the criminal case, a jury found Rajaratnam guilty on all counts charged.[1] Specifically, Rajaratnam was found to have executed trades in Galleon's accounts and in the account of Rajiv Goel ("Goel"), an Intel executive who had provided tips to Rajaratnam, in the stock of five companies on the basis of inside information. The district court sentenced Rajaratnam to 132 months' imprisonment and to a $10 million criminal fine. In a

---

[1] This Court subsequently affirmed Rajaratnam's conviction. *United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2820 (2014).

separate proceeding, before Judge Preska, the district court calculated

Rajaratnam's forfeiture under 18 U.S.C. § 981, and determined that the amount of

the "profits gained (or losses avoided) in Galleon" accounts "as a result of" all of

Rajaratnam's offenses—both the substantive and conspiracy violations—was

$53.8 million. Supp. App. at 303–04.

After Rajaratnam's conviction, the SEC moved for partial summary

judgment in the civil case on its claims of insider trading in the same five stocks

that formed the factual basis for Rajaratnam's criminal conviction.[2] Rajaratnam

conceded that his criminal conviction for insider trading in these five stocks

collaterally estopped him from contesting liability. Rajaratnam did not oppose

entry of a permanent injunction prohibiting him from further violating the

securities laws' antifraud provisions. The SEC agreed that its demand for $31.6

million in disgorgement was moot in light of the $53.8 million forfeiture order.

Thus, the only issues in dispute on summary judgment were the need for, and

the amount of, the civil penalty.

---

[2] The SEC advised the district court that it would not proceed to trial to prove insider trading in any stocks that were not the subject of Rajaratnam's substantive securities fraud convictions.

The SEC sought the maximum treble penalty available under the statute. It argued that such a penalty was warranted because Rajaratnam orchestrated a multi-year campaign of insider trading, corrupted numerous corporate insiders, and had taken highly deliberate steps to evade detection. The SEC emphasized that the high-profile nature of this case would afford the district court "a truly unique opportunity to send as strong a message as possible to the investment community, and indeed the world, that insider trading and corruption in connection with this nation's capital markets will not be tolerated." App. at 163.

In response, Rajaratnam argued that no civil penalty at all was warranted because of the punishment already meted out in his criminal case: 11 years' imprisonment, the longest prison term ever imposed for insider trading, a criminal fine of $10 million, and a $53.8 million order of forfeiture. In the event that the district court did impose a civil penalty, Rajaratnam argued that the penalty should be calculated by reference only to the profits Rajaratnam *personally* received as a result of the conduct at issue. Those profits, approximately $4.7 million, came from Rajaratnam's share of his management fees and returns on his personal investment in Galleon's funds.

After hearing oral argument, the district court issued a written decision on the issue of Rajaratnam's civil penalty. First, the district court accepted Rajaratnam's calculation that the *total* profit gained and loss avoided by the illegal trades he executed in Galleon's and Goel's accounts on the basis of inside information was $30,935,235.[3] The district court then trebled this number to impose a civil penalty of $92,805,705.

The district court concluded that the Section 21A(a)(2) penalty of "three times the profit gained or loss avoided" was not limited to Rajaratnam's personal gains (of around $4.7 million) but, rather, extended to the amount resulting from the "illegal trades [Rajaratnam] executed." *SEC v. Rajaratnam*, 822 F. Supp. 2d 432, 435 (S.D.N.Y. 2011). The district court reasoned that "nothing in the text of Section 21A" required that the civil penalty be based only on profits Rajaratnam "personally gained," that no case law supported limiting the civil penalty amount to personal gain, and that Rajaratnam's reading would result in the

---

[3] Rajaratnam's $53.8 million criminal forfeiture was based on the "profits (or losses avoided) in Galleon" accounts "as a result of" all of the offenses Rajaratnam was charged with in the criminal case—both the substantive and conspiracy violations. Supp. App. at 303–04. The calculation differed for Rajaratnam's civil case because the SEC moved for partial summary judgment on only the substantive counts of insider trading.

"evasion, in effect, of defendant's responsibility for the wrongdoing he committed." *Id*.

The district court then decided that imposing a civil penalty of three times the base amount of profit gained and loss avoided was warranted because "this case meets every factor favoring trebling": Rajaratnam's violations were egregious; he acted with a high degree of scienter; his conduct created substantial losses to investors; his conduct continued for years; and he had the ability to pay a substantial penalty. *Id.* a*t* 433–34. The district court concluded that "this case cries out for the kind of civil penalty that will deprive [Rajaratnam] of a material part of his fortune" given the "huge and brazen nature of Rajaratnam's insider trading scheme, which, even by his own estimates, netted tens of millions of dollars and continued for years." *Id*. at 434.

The district court acknowledged that Rajaratnam had already been punished in the criminal case, and noted that penalties imposed on a defendant in a "parallel criminal action may . . . be relevant" to the size of the civil penalty. *Id*. But the district court found that the maximum civil penalty was warranted despite Rajaratnam's criminal sentence because the focus of criminal punishment is on moral blameworthiness, by contrast to SEC civil penalties, which are

9

designed to effect general deterrence and to make insider trading a money-losing proposition.

Rajaratnam timely appealed from the district court's final judgment.

**DISCUSSION**

Rajaratnam raises two arguments on appeal. First, he argues that the civil penalty for insider trading under Section 21A may not exceed three times *his own* profit gained or loss avoided. Second, he argues that the district court abused its discretion in imposing the maximum penalty under the statute, because it improperly relied on his wealth to justify the penalty, and failed to consider the criminal penalties already imposed on him.

We review the district court's ruling on the former question, a matter of statutory interpretation, *de novo*. *See Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007). We review its decision on the latter question, the appropriateness of the district court's selection of a civil penalty, for abuse of discretion. *See SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013). "[T]he burden of showing that the [district] court abused [its] discretion . . . necessarily is a heavy one." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972). "Under this standard, we will reverse only if we have a definite and firm conviction that

10

the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *SEC v. Bankosky*, 716 F.3d 45, 47 (2d Cir. 2013) (internal quotations omitted).

## I.    The Section 21A Treble Damages Provision

The district court calculated the base amount of Rajaratnam's civil penalty by using Rajaratnam's calculation of the "profit gained or loss avoided" as a result of the illegal trades he executed, even though the pecuniary gain from those trades went mostly to Galleon's and Goel's accounts. Rajaratnam argues that the district court erred because the maximum penalty under Section 21A is "three times the profit gained or loss avoided" *by the defendant*, and that the penalty should therefore be calculated with reference only to the $4.7 million he *personally realized* from his management fees, bonuses, and investment returns from Galleon. Rajaratnam claims that the statute's text, structure, legislative history, and purpose support his contention.[4] We disagree.

---

[4] The SEC argues that Rajaratnam waived this argument by failing to raise it before the district court. Whether or not Rajaratnam adequately raised the issue before the district court, it is properly before us because the district court expressly decided the question of whether "the SEC's figure should be reduced to the amount [Rajaratnam] personally gained." *Rajaratnam*, 822 F. Supp. 2d at 435; *see United States v. Harrell*, 268 F.3d 141, 146 (2d Cir. 2001) (considering issue because court below resolved it); *Stevens v. Dep't of Treasury*, 500 U.S. 1, 8 (1991)

11

Section 21A permits the SEC to bring an action against Rajaratnam, as "the person who committed" a violation by "purchasing or selling" securities on the basis of inside information. *Id*. at (a)(1). Subsection (a)(2) provides that:

> The amount of the penalty which may be imposed on the person who committed such violation shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase, sale, or communication.

*Id*. at (a)(2).

Rajaratnam argues that because subsection (a)(2) does not identify who must gain profit or avoid losses, the civil penalty calculation must be limited to the violator's personal profit.[5] But a plain reading of subsection (a)(2) indicates

_____

(concluding that "issue [was] properly before" the reviewing court because the court below "decided the substantive issue").

[5] Rajaratnam points us to *United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012), where we held that the defendant could not be ordered to forfeit, pursuant to 18 U.S.C. § 981(a)(2)(b), profits that he never received or possessed. *Id*. at 145. We noted that the forfeiture statute did not expressly identify who must do the acquiring that results in forfeiture. *Id*. at 146. Rajaratnam argues that because Section 21A(a)(2), like § 981(a)(2)(b), does not identify who must profit, the Court should hold that the relevant amount here is Rajaratnam's own "profit gained or loss avoided." But the reasoning of *Contorinis* does not apply here.

In *Contorinis*, we interpreted the forfeiture statute in light of the meaning of the word "forfeiture." 692 F.3d at 146. We held that someone could not be ordered to forfeit profits that he never received or possessed because "forfeiture" generally connotes a person's losing an entitlement as a penalty for proscribed

that it permits a civil penalty to be based on the total profit resulting from the

conduct. *Id*. Contorinis, therefore, could not be ordered to forfeit the profits that the Government sought because such profits were in the possession of the beneficiary fund over which Contorinis entirely lacked control. *Id*. But even in that context, we noted that the general rule that forfeiture relates to the defendant's own gains is "somewhat modified by the principle that a court may order a defendant to forfeit proceeds received by others who participated jointly in the crime, provided the actions generating those proceeds were reasonably foreseeable to the defendant." *Id*. at 147. Nothing in the idea of a civil *penalty*, which is designed to deter future violations, implies a comparable limitation to funds in the immediate possession of the violator.

In any event, Rajaratnam's case has already been distinguished from *Contorinis* on its facts. *See Rajaratnam v. United States*, 736 F. App'x 279 (2d Cir. 2018). After this Court decided *Contorinis*, Rajaratnam sought coram nobis relief on the grounds that his criminal forfeiture order under 18 U.S.C. § 981 was not limited to his own profits. *Id*. at 283. This Court, by summary order, denied relief on the grounds that in *Contorinis*, the defendant portfolio manager did not control disbursement of the profits of the beneficiary fund of his inside trading, and he did not personally receive or possess the profits realized by the beneficiary fund from his inside trading. *See id*. By contrast, we noted that in this case:

> Rajaratnam was the founder and managing general partner of Galleon and, as such, exercised control over both that firm and the proceeds it acquired, including the proceeds acquired as a result of his insider trading. Even if those proceeds subsequently were distributed to investors, with Rajaratnam personally retaining only a percentage as management fees, he nonetheless had authority over disbursements, and, thus, exercised control over the proceeds at some point.

*Id*. at 283–84 (quoting *Contorinis*, 692 F.3d at 147).

Thus, even in the context of forfeiture itself, *Contorinis* did not control this case. Still less does it have any application to the civil penalty at issue here.

violation. *See SEC v. Rosenthal*, 650 F.3d 156, 160 (2d Cir. 2011) (holding that the maximum penalty under Section 21A is based on the "profitability of the *violation*") (emphasis added); *SEC v. Anticevic*, No. 05-cv-6991, 2010 WL 2077196, at *8 (S.D.N.Y. May 14, 2010) (imposing a civil penalty of three times the *total* profits earned through the inside trader's scheme, not just the profits he earned himself). Because Rajaratnam "executed" Galleon's and Goel's "illegal trades," *Rajaratnam*, 822 F. Supp. 2d at 435, his civil penalty can be calculated under subsection (a)(2) based on Galleon's and Goel's "profit gained or loss avoided as a result of [Rajaratnam's] unlawful purchase[s] [and] sale[s]," Section 21A(a)(2).

Our interpretation of the statute is confirmed by the fact that elsewhere in the federal securities laws Congress expressly limited the "amount of the penalty" for particular violations to the "gross amount of pecuniary gain *to such defendant* as a result of the violation." *See, e.g.*, Securities Act Section 20(d)(2), 15 U.S.C. §§ 77t(d)(2)(A), (B), (C); Exchange Act Section 21(d), 15 U.S.C. §§ 78u(d)(3)(B)(I), (ii), (iii); Investment Company Act of 1940 Section 42(e), 15 U.S.C. §§ 80a-41(e)(2)(A), (B), (C); Investment Advisers Act of 1940 Section 209(e), 15 U.S.C. §§ 80b-9(e)(2)(A), (B), (C) (emphasis added). Rajaratnam's reading of Section 21A(a)(2) thus contravenes the rule that "[w]here Congress includes

14

particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion and exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

Nor can Rajaratnam's interpretation of Section 21A be reconciled with how the statute treats tippers who do not themselves trade or otherwise receive pecuniary gain for their tips. Subsection (a)(1) makes tippers who unlawfully communicate inside information "violat[ors]" eligible for a civil penalty. Subsection (a)(2) then provides for the imposition of a civil penalty on "the person who committed such violation" (including the tipper who does not himself trade) in an amount up to three times the profit gained or loss avoided "as a result of such unlawful purchase, sale, or *communication*."*Id*. (emphasis added). The only possible "profit gained or loss avoided" by a "communication" of inside information by a non-trading tipper would result from the trading of the tipper's tippee(s). Accordingly, subsection (a)(2) necessarily permits a violator's civil penalty to be calculated based on the third parties' profit gained or loss avoided, i.e., the profits gained or loss avoided from the defendant's

15

violation.[6] *See, e.g., SEC v. Warde*, 151 F.3d 42, 49 (2d Cir. 1998); *SEC v. Gupta*, No.

11 Civ. 7566(JSR), 2013 WL 3784138, at \*2 & n.4 (S.D.N.Y. July 17, 2013) (imposing

treble civil penalty on tipper for "total" trading gains), *aff'd* 569 F. App'x 45 (2d

Cir. 2014).

Further, we are unpersuaded by Rajaratnam's argument that the

deterrence purpose of Section 21A is served only if the base amount of the

penalty is the amount of profit earned by the defendant. As we explained in *SEC*

*v. Contorinis*, 743 F.3d 296, 303 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 531 (2015), in

affirming a disgorgement award of profits channeled to friends, family, and

clients, "[w]hether the defendant's motive is direct economic profit, self-

aggrandizement, psychic satisfaction from benefitting a loved one, or future

profits by enhancing one's reputation as a successful fund manager, the insider

trader who trades for another's account has engaged in a fraud, secured a benefit

---

[6] The legislative history confirms that Section 21A was "intended to permit penalties to be imposed upon both insider traders and tippers." H.R. Rep. 100-910, at \*18-\*20. Congress noted that, like the "purchase or sale of securities" on the basis of inside information, the "communication of [] advance inside knowledge to others who trade while in possession of that information similarly poses serious problems for the fair and honest operation of our securities markets." *Id*. at \*8.

thereby, and directed the profits of the fraud where he has chosen them to go."[7]

The purpose of Section 21A is to deter the whole of the conduct Rajaratnam engaged in by exacting a penalty for it. That Rajaratnam's insider trading produced a direct traceable increase of only $4.7 million in his own bank account is not a convincing reason to limit the amount of his penalty, because it is "difficult to quantify the advantages of an enhanced reputation," psychic satisfaction, and self-aggrandizement for an insider trader. *Contorinis*, 743 F.3d at 306. Rajaratnam was motivated to orchestrate not merely a scheme to gain a few million dollars by trading in his own account, but a massive project that gained tens of millions for his clients and associates. As Congress recognized, in order to remove that motivation, an appropriate penalty must be keyed to the total scope of the scheme.

---

[7] Whereas *United States v. Contorinis*, *see infra* note 5, held that a criminal defendant could not be ordered to forfeit profits he never had, *SEC v. Contorinis*, regarding the same defendant, distinguished between the purposes of criminal forfeiture and civil disgorgement, and held that "an insider trader who trades on behalf of another person or entity using funds he does not own, and thus produces illegal profits that he does not personally realize, can nevertheless be required to disgorge the full amount of the illicit profit he generates from his illegal and fraudulent actions," 743 F.3d at 299. Civil disgorgement was not appropriate here in light of Rajaratnam's $53.8 million in criminal forfeiture, but we conclude that, like civil disgorgement, civil penalties may be awarded on the basis of the full amount of illegal profits generated.

## II.  The District Court's Discretion in Setting the Penalty

Rajaratnam next argues that, whatever the statutory maximum, the district court abused its discretion in setting the amount of the penalty because the district court impermissibly relied on the defendant's wealth and refused to consider the deterrent effect of the criminal penalties already imposed on him. We reject those arguments, which distort the district court's actual reasoning.

Section 21A(a)(2) authorizes federal courts to impose civil penalties for insider trading violations in amounts "determined by the court in light of the facts and circumstances." The district court noted that this was a broad mandate, and cited the factors from *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007), which courts frequently consider in setting such penalties, including "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Rajaratnam*, 822 F. Supp. 2d at 433. The district court then held that every factor favoring trebling is present here. *Id*. at 434. Rajaratnam does not contend that these factors

were not appropriately considered, and (with only one exception, discussed below) does not seriously dispute the district court's conclusion – with which we agree – that each of these favors the use of a treble penalty.

## A.     The District Court's Consideration of Rajaratnam's Wealth

Rajaratnam claims that the district court impermissibly justified its imposition of a massive penalty on the basis of Rajaratnam's wealth. He maintains that only one of the *Haligiannis* factors touches on the defendant's wealth, and that factor provides only for mitigation, not aggravation. He argues that these factors allow no room for the use of a defendant's financial status to *increase* the penalty imposed on him.

While the *Haligiannis* factors have been considered in several cases, *see SEC v. Gupta*, 569 F. App'x 45, 48 (2d Cir. 2014); *SEC v. Milligan*, 436 F. App'x 1, 2 (2d Cir. 2011); *SEC v. Rosenthal*, 426 F. App'x 1, 2 (2d Cir. 2011), they have not been deemed an exhaustive list by this Court and are not to be taken as talismanic. We have never held that it is impermissible for a district court to consider a defendant's wealth in imposing a civil penalty. In fact, other circuits have explicitly approved the consideration of a defendant's wealth in imposing a civil penalty under Section 21A. *See, e.g., SEC v. Lipson*, 278 F.3d 656, 665 (7th Cir.

19

2002) (upholding the district court's discretion to impose a treble civil penalty given the defendant's wealth); *cf. SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008) (holding it permissible for the district court to consider the defendant's wealth in setting a civil penalty); *SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir. 2003) (considering defendant's financial worth in determining whether to assess civil penalties). And we have held it is permissible to do the same in imposing a criminal fine under the Sentencing Guidelines. *See United States v. Zukerman*, 897 F.3d 423, 431 (2d Cir. 2018) ("[A] defendant's wealth is relevant in determining whether a particular fine will deter illegal conduct . . . [because a] fine can only be an effective deterrent if it is painful to pay, and whether a given dollar amount hurts to cough up depends upon the wealth of the person paying it.").

We thus have no hesitation in concluding that, in calculating the size of a penalty necessary to deter misconduct, the extent of a defendant's wealth is a relevant consideration. A fine that would be significantly painful to a person of modest means might be a mere slap on the wrist or "cost of doing business" to a wealthier offender. Rajaratnam contends, however, that the district court's use of this factor was motivated by a bare desire to strip Rajaratnam of his wealth, much of which, it is undisputed, was earned legitimately. We do not question that a

20

vindictive bias against or hostility towards persons of means would be an inappropriate consideration in setting a penalty for securities fraud. But the suggestion that the district court here was so motivated distorts the record, and ignores the court's careful and thoughtful analysis of the factors bearing on the appropriate penalty.

Rajaratnam points to the district court's statement that "this case cries out for the kind of civil penalty that will deprive this defendant of a material part of his fortune." *Rajaratnam*, 822 F. Supp. 2d at 434. But read in context, it is clear that the district court had already concluded that the brazenness, scope, and duration of Rajaratnam's insider trading warranted a significant penalty. A review of the record as a whole, including the transcript from the hearing before the district court on the amount of the penalty, reveals that the district court was concerned with whether "it [was] realistically likely that [Rajaratnam would] be able to pay." App. at 324. The district court made clear that it did not want to enter a "symbolic" judgment that lacked a "reasonable possibility it gets paid." App. at 324–25. The district court accepted Rajaratnam's invitation to review the portion of the Pre-Sentence Report from his criminal case that set forth his net worth, and then concluded (in what, after reviewing that Report, we regard as an

21

understatement) that his net worth "considerably exceed[ed] the financial penalties imposed in the criminal case," *Rajaratnam*, 822 F. Supp. 2d at 434, leaving him in a position to be able to pay the civil penalty.[8] In short, we find no legal error or abuse of discretion in the district court's consideration of Rajaratnam's wealth in connection with determining the size of the civil penalty.

## B. The District Court's Consideration of Rajaratnam's Criminal Penalties

Rajaratnam also asserts that the district court improperly refused to take any account of the other penalties to which he had already been subjected. But again the record reflects otherwise. The district court explicitly noted that

---

[8] Rajaratnam also emphasizes a reference by the district judge, at oral argument, to a statement of former SEC Chairman Richard Breeden "who, on the subject of insider trading, said he wanted to leave the insider traders something like worthless, homeless, and maybe clothesless." App. at 327. But this reference too is taken out of context. Judges at oral argument frequently put forward ideas or comment to elicit the views of counsel for the parties. The Breeden quotation does not figure in the district court's written explanation of its reasoning for selecting a penalty. Thus, we understand the court's reference to Breeden's comment as the expression of a strong view that, in the end, the court did not adopt. That the judge expressed concern with whether Rajaratnam would actually be able to pay, or the SEC to collect, whatever penalty would be imposed makes clear that he was not looking to impose a fine that would meet or exceed Rajaratnam's resources and leave him penniless. Finally, the court's review of the Pre-Sentence Report made clear that the penalty imposed would have no such effect, and that even after paying the fine, Rajaratnam and his family would still possess significant wealth.

Rajaratnam was sentenced to 11 years in prison, was ordered to forfeit $53.8 million, and was fined an additional $10 million in criminal penalties. It went on to recognize that the penalties in a "parallel criminal action may . . . be relevant" in determining whether to impose a civil penalty. *Rajaratnam*, 822 F. Supp. 2d at 434. But the district court found that in light of the facts and circumstances of this case, the civil penalty here had to be set at a level that would show, not just to Rajaratnam, but to all those who consider it, that such lucrative insider trading is a "money-losing proposition." *Id*.

That the district court did not ultimately offset the amount of the civil penalty against the extent of Rajaratnam's criminal punishment does not mean that the district court did not consider those punishments, still less that it abused its discretion. Section 21A provides that a civil action brought by the SEC for a civil penalty "may be brought *in addition* to any other actions that the Commission or the Attorney General are entitled to bring." Section 21A(d)(3) (titled "Remedy not exclusive") (emphasis added). Thus, Congress expressly anticipated that at least some insider traders would face both criminal and civil penalties. *See Gupta*, 569 F. App'x at 48 (rejecting Gupta's argument that a treble penalty was inappropriate in light of criminal penalties already imposed).

23

Rajaratnam points to cases in which district courts refrained from ordering the maximum civil penalty based, in part, on the fact that separate criminal penalties had been imposed as a result of the defendant's conduct. But Section 21A tasks district courts with imposing a penalty "in light of the facts and circumstances" of each defendant's particular case. In some circumstances it may be appropriate to offset the penalty by a defendant's criminal punishment; in others, not. Given the district court's latitude under the statute, and its conclusions about Rajaratnam's conduct, we cannot say that the district court abused its discretion in imposing the maximum civil penalty on Rajaratnam even though he had already received a significant criminal sentence.

## CONCLUSION

For the reasons stated above, we AFFIRM the order of the district court.