18-2564 (L)
*SEC v. de Maison*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> GERARD E. LYNCH,
> *Circuit Judge*,
> CLAIRE R. KELLY,
> *Judge.\**

---

SECURITIES AND EXCHANGE COMMISSION,

    *Plaintiff-Appellee*,

    v.                                                                 18-2564 (L), 21-620 (Con)

ANGELIQUE DE MAISON,

    *Defendant-Cross Defendant-Appellant*,

PETER VOUTSAS, RONALD LOSHIN,

    *Defendants*,

JASON COPE, IZAK ZIRK DE MAISON, FKA IZAK ZIRK ENGELBRECHT, LOUIS MASTROMATTEO, TRISH

---

\* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

1

MALONE, KIERAN T. KUHN, GEPCO, LTD., SUNATCO LTD., SUPRAFIN LTD., WORLDBRIDGE PARTNERS, TRAVERSE INTERNATIONAL, SMALL CAP RESOURCE CORP., GREGORY GOLDSTEIN, STEPHEN WILSHINSKY, TALMAN HARRIS, WILLIAM SCHOLANDER, JUSTIN ESPOSITO, KONA JONES BARBERA, VICTOR ALFAYA,

*Defendants-Cross Defendants,*

JACK TAGLIAFERRO,

*Defendant-Cross Claimant-Cross Defendant.*

| | |
|---|---|
| For Plaintiff-Appellee: | THEODORE WEIMAN, Senior Litigation Counsel (Michael A. Conley, Solicitor, John B. Capehart, Senior Counsel, *on the brief*), United States Securities and Exchange Commission, Washington, D.C. |
| For Defendant-Cross Defendant-Appellant: | JEFFREY B. COOPERSMITH (Lauren B. Rainwater, Davis Wright Tremaine LLP, Seattle, Washington, *on the brief*), Orrick, Herrington & Sutcliffe LLP, Seattle, Washington. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Cross Defendant-Appellant Angelique de Maison appeals from a judgment of the district court entered against her following a consent agreement with Plaintiff-Appellee United States Securities and Exchange Commission ("SEC"). This case returns to us after the Supreme Court vacated our judgment affirming the district court's prior order, *SEC v. de Maison*, 785 F. App'x 3 (2d Cir. 2019), and remanded the case for further consideration in light of *Liu v. SEC*, 140 S. Ct. 1936 (2020). *See de Maison v. SEC*, 141 S. Ct. 186 (2020) (mem.). After we vacated the

2

district court's judgment and remanded the case to the district court and the SEC recommended a reduced disgorgement sum, the district court ordered de Maison to disgorge $524,885 and imposed a third-tier civil penalty of $4,240,049.30. *SEC v. Cope*, No. 14-cv-7575, 2021 WL 653088, at *3 (S.D.N.Y. Feb. 19, 2021). On appeal, de Maison argues that the district court failed to properly account for her personal net profits in ordering the revised disgorgement award; that the district court abused its discretion in reimposing the initial civil penalty of $4,240,049.30; and that the record warrants reassigning the case to another judge on remand. We otherwise assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"[O]nce the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies." *SEC v. Fowler*, 6 F.4th 255, 265 (2d Cir. 2021) (quoting *SEC v. Sourlis*, 851 F.3d 139, 146 (2d Cir. 2016)). "The court's choice of remedies is reviewed for abuse of discretion." *SEC v. Frohling*, 851 F.3d 132, 139 (2d Cir. 2016). "Under this standard, we will reverse only if we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *SEC v. Rajaratnam*, 918 F.3d 36, 41 (2d Cir. 2019) (quoting *SEC v. Bankosky*, 716 F.3d 45, 47 (2d Cir. 2013) (per curiam)). For the following reasons, we conclude that the district court acted within its discretion in ordering the revised disgorgement award and reimposing the civil penalty and that its order aligned with the principles articulated in *Liu*.

## I. Disgorgement Award

De Maison contends that the $524,885 disgorgement award exceeds her true net profits of $184,652 and that the SEC failed to sufficiently relate the recommended disgorgement amount to her fraudulent conduct. She challenges several portions of the SEC's disgorgement calculation,

3

asserting that about $180,000 in investor funds ultimately reached the appropriate destination accounts, $80,000 reflected a personal loan that she repaid with interest, and $80,000 was transferred to an account on which the original investor was a joint owner. The district court rejected de Maison's arguments, concluding that her claims "ignore the fungibility of money." *Cope*, 2021 WL 653088, at *2. The district court held that the impossibility of determining whether "the precise tranche of money diverted to de Maison's accounts was the precise tranche of money deposited by an investor" did not overcome the SEC's demonstration that de Maison transferred investor funds to personal accounts and used investor funds for personal expenses. *Id.* We agree.

De Maison correctly notes that *Liu* limits disgorgement awards issued as "equitable relief" under 15 U.S.C. § 78u(d)(5) to a "wrongdoer's net profits." *Liu*, 140 S. Ct. at 1940. Yet "separating legal from illegal profits exactly may at times be a near-impossible task." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013) (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)), *as amended*. Thus, "[t]he amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation," and "any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.* (internal quotation marks and citations omitted). "Once the SEC has met the burden of establishing a reasonable approximation of the profits causally related to the fraud, the burden shifts to the defendant," *id.*, who is "obliged clearly to demonstrate that the disgorgement figure was not a reasonable approximation," *id.* at 32 (quoting *First City*, 890 F.2d at 1232). We recently reaffirmed these principles in the wake of *Liu*. *See Fowler*, 6 F.4th at 267. Moreover, *Liu* did not disturb this Court's longstanding principle that "specific tracing [is] unnecessary in ordering disgorgement for securities fraud." *SEC v. Contorinis*, 743 F.3d 296, 303 n.3 (2d Cir.

4

2014); *see also FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011) ("[T]he Federal Reporter is replete with instances in which judges of this Court deeply familiar with equity practice have permitted the SEC to obtain disgorgement without any mention of tracing.").

Here, the district court ordered disgorgement of $524,885 upon a showing by the SEC that, shortly after large sums of investor funds were deposited into bank accounts designed for the benefit of investors, de Maison transferred those funds to her personal accounts or used those funds for her personal expenses. We discern no basis for concluding that the district court abused its discretion in finding that the SEC fulfilled its burden of establishing "a reasonable approximation of the profits causally related to the fraud," and that de Maison had failed to meet her corresponding burden to demonstrate that the disgorgement figure was not a reasonable approximation. *Razmilovic*, 738 F.3d at 31. As the district court noted, de Maison's citation of roughly concurrent transfers of investor funds to appropriate destination accounts does not overcome the SEC's showing that de Maison transferred investor funds to personal accounts and used investor funds for personal expenses. *Cope*, 2021 WL 653088, at *2. Likewise, de Maison's assertion that a portion of investor funds reached an account jointly owned by an investor does not demonstrate that those funds did not in fact constitute her net profits, especially given that "any risk of uncertainty should fall on the wrongdoer," *Razmilovic*, 738 F.3d at 31 (internal quotation marks and citation omitted). Finally, as to de Maison's claim that certain investor funds served as a personal loan, she fails to clearly demonstrate that the SEC's inclusion of this sum in her net profits was unreasonable.

## II. Civil Penalty

De Maison also challenges the district court's reimposition of a civil penalty of $4,240,049.30. In issuing the penalty, the district court noted that the maximum statutory fine —

5

the "gross amount of pecuniary gain" — remained the same and perceived "no reason to reconsider its conclusion that the maximum fine is appropriate." *Cope*, 2021 WL 653088, at *3. On appeal, de Maison argues, *inter alia*, that the penalty was disproportionate in light of the reduced disgorgement sum; that the district court failed to adequately address statutory limits on civil penalties; and that the penalty did not reflect a proper accounting of mitigating circumstances and de Maison's "reduced culpability," Defendant-Cross Defendant-Appellant's Br. at 29, in the wake of the revised disgorgement award.

We conclude that the district court acted within its discretion in reimposing the civil penalty. A district court enjoys "wide discretion" in devising civil penalties, *Fowler*, 6 F.4th at 266, and need not adjust its civil penalty in light of a revised disgorgement award. Indeed, the Supreme Court in *Liu* did not directly speak to the relationship, if any, between the equitable disgorgement awards authorized under § 78u(d)(5) and civil penalties authorized elsewhere in the statute. 140 S. Ct. at 1940. Pre-*Liu* cases often equated the "disgorgeable gain" available in equity with the maximum civil penalty based on a wrongdoer's "gross amount of pecuniary gain," *see Razmilovic*, 738 F.3d at 38 (quoting 15 U.S.C. § 78u(d)(3)(B)(iii)), but those concepts have always been distinct under the law. By emphasizing that equitable disgorgement is limited to the "*net* profits from wrongdoing," *Liu*, 140 S. Ct. at 1945 (emphasis added), the Supreme Court severed any equation of disgorgement amounts from the "*gross* amount of pecuniary gain," that constitutes the maximum civil penalty for a third-tier civil violation, 15 U.S.C. § 78u(d)(3)(B)(iii) (emphasis added). Accordingly, this Court has noted since *Liu* that "[w]e have not previously held that the civil penalty for a securities fraud offense needs to be proportional to the disgorgement amount." *Fowler*, 6 F.4th at 266; *see also SEC v. Penn*, No. 14-cv-581, 2021 WL 1226978, at *14 n.23 (S.D.N.Y. Mar. 31, 2021) ("[N]othing in *Liu* disturbs the Court's power to order civil

6

penalties."). Thus, we find no basis for reversal either in the fact that the civil penalty initially equaled and now exceeds the disgorgement amount or in any alleged relationship between civil penalties and disgorgement awards imposed by courts and recommended by the SEC.

Furthermore, the reimposed civil penalty falls within statutory bounds. A district court may impose a third-tier civil penalty for securities law violations that "resulted in substantial losses," with the option to impose up to the "gross amount of pecuniary gain to such defendant as a result of the violation." *See* 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Here, the SEC's complaint alleged that de Maison acted as an unregistered broker-dealer in the sales of unregistered securities that totaled $4,240,049.30, thus violating sections 5(a), 5(c), and 15(a) of the Exchange Act, 15 U.S.C. §§ 77e(a), 77e(c), 78o(a). *See* Joint App'x at 116, 125–28, 147–48, 156. In her consent with the SEC, de Maison agreed that "the allegations of the Complaint shall be accepted as and deemed true" for the purposes of a motion for a civil penalty, and that she could neither "argu[e] that she did not violate the federal securities laws as alleged" nor "challenge the validity of th[e] Consent or the Final Judgment." Joint App'x at 177. The district court imposed a civil penalty of $4,240,049.30 upon determining that "the SEC has demonstrated that . . . de Maison[]'s illegal conduct generated proceeds of $4,240,049.30" and that a maximum fine was warranted. *SEC v. Cope*, No. 14-cv-7575, 2018 WL 3628899, at *6 (S.D.N.Y. July 30, 2018); *see id.* at *8. Following the remand, the SEC's updated declaration reaffirmed that the $4,240,049.30 figure "undisputedly represented the amount of money raised from investors in the illegal offerings in which de Maison participated," Supp. App'x at 48, a stipulation that de Maison does not directly contest on appeal.[1]

---

[1] At oral argument, de Maison's counsel suggested that her gross pecuniary gain should be limited to the net profits calculated by the SEC (i.e., the disgorgement award) because the SEC had not

7

Accordingly, the district court acted within statutory limits in reimposing the same civil penalty, which continued to represent the "gross amount of pecuniary gain" to de Maison. *See* 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Contrary to de Maison's assertions, the district court's original decision indicated only its choice to impose the maximum fine, not necessarily its commitment to impose a civil penalty equal to the disgorgement sum. Moreover, de Maison's citation to cases involving the relationship between disgorgement awards and statutory pecuniary gains before the Supreme Court decided *Liu* falls short of demonstrating that the district court abused its discretion in reimposing the civil penalty under a post-*Liu* understanding of disgorgement.

Finally, the district court properly accounted for mitigating factors in imposing the civil penalty. As de Maison recognizes, "several factors determine an appropriate civil penalty award: '(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.'"

---

identified any deductible business expenses to explain the apparent difference between de Maison's "net" and "gross" proceeds. We disagree. The essence of the fraud here was the sale by de Maison of unregistered, essentially worthless stock. Thus, all of the proceeds from the sale — the gross revenue obtained from the fraud — were due to de Maison and came to the accounts that she designated. It is arguable that amounts distributed to co-conspirators should not reduce the "net profits" that should be disgorged. *See Liu*, 140 S. Ct. at 1950 ("[W]hen the entire profit of a business or undertaking results from the wrongdoing, a defendant may be denied inequitable deductions . . . [b]ut that exception requires ascertaining whether expenses are legitimate." (internal quotation marks and citations omitted)). Yet that issue is not before us. To the extent that the SEC acquiesced by calculating only "net profits" from the proceeds that went directly to de Maison's use, that approach does not alter the fact that the gross amount of the proceeds of the fraud in which de Maison played a central role — and that was, at least initially, under her control — consisted of the entire $4.2 million in receipts from the illegal securities sale.

*Fowler*, 6 F.4th at 266 (quoting *Rajaratnam*, 918 F.3d at 44). On appeal from the district court's initial imposition of the $4,240,049.30 civil penalty, we held that "de Maison's argument that the district court failed to give adequate consideration to mitigating factors when calculating the civil penalty is belied by the record." *de Maison*, 785 F. App'x at 7 n.2. Given that the district court cited its original reasoning in ordering the same civil penalty on remand, we discern no basis for holding that the district court "committed a clear error of judgment," *Rajaratnam*, 918 F.3d at 41 (citation omitted), in reimposing the penalty. *See Cope*, 2021 WL 653088, at *3 (noting the district court's earlier finding that "de Maison's 'egregious and recurrent conduct' justified a 'serious punitive response'" and "see[ing] no reason to reconsider its conclusion" (quoting *Cope*, 2018 WL 3628899, at *8)). More fundamentally, we disagree with de Maison's contention that the "vast reduction" in the disgorgement sum "must track some reduction in the understanding of [her] culpability and role in the charged conduct." Defendant-Cross Defendant-Appellant's Br. at 24. The revised sum reflects only the Supreme Court's clarification of the proper calculation of disgorgement awards, not a shift in our understanding of de Maison's securities law violations or her culpability.

\*       \*       \*

Because we conclude that the district court acted within its discretion in ordering the revised disgorgement award and reimposing the civil penalty, we do not entertain de Maison's assertion that the record warrants reassigning the case to another judge on remand. We have considered de Maison's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9