*SEC v. O'Brien*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

> **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of June, two thousand twenty-four.**

**PRESENT:**

> **RICHARD C. WESLEY,**
> **MICHAEL H. PARK,**
> **BETH ROBINSON,**
> > *Circuit Judges.*

---

**Securities and Exchange Commission,**

> *Plaintiff-Appellee*,

> v.                                                    **23-1071**

**James David O'Brien,**

> *Defendant-Appellant.*

---

| | |
|---|---|
| **FOR PLAINTIFF-APPELLEE:** | Megan Barbero, General Counsel; Michael A. Conley, Solicitor; Jeffrey A. Berger, Assistant General Counsel; Allison Bitz, Attorney, United States Securities and Exchange Commission, Washington, D.C. |
| **FOR DEFENDANT-APPELLANT:** | John M. Hanamirian, Hanamirian Law Firm, PC, Moorestown, NJ. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

The Securities and Exchange Commission ("SEC") brought a civil enforcement action against James David O'Brien in November 2021, alleging that he violated various securities laws by engaging in "coordinated trading"—a strategy that involved using accounts at multiple brokerage firms to manipulate stock prices. O'Brien settled; he did not admit or deny the SEC's allegations, but the parties agreed that the SEC could move for disgorgement and a civil penalty and that the district court would "determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty . . . and if so, the amount(s) of the disgorgement and/or civil penalty." App'x at 1586. O'Brien was "precluded from arguing that he did not violate the federal securities laws as alleged." *Id.* He also agreed that for the purposes of the SEC's motion, the SEC's allegations would "be accepted as and deemed true by the Court except with respect to the quantum of disgorgement, *i.e.*, net profits." *Id.*

The district court determined that the SEC's allegations established violations of several securities laws, and it ordered O'Brien to disgorge $5,197,322. This was the amount calculated by the SEC's expert as O'Brien's net profit from the scheme after deducting expenses of $868,358, the amount O'Brien had paid in fees and commissions. The district court also imposed a "third tier" penalty of $10,315,065 under 15 U.S.C. § 77t(d)(2)(C) and 15 U.S.C. § 78u(d)(3)(B)(iii). O'Brien now challenges both the disgorgement amount and the penalty. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

We review the district court's choice of remedies after it has found federal securities law violations for abuse of discretion. *See SEC v. Fowler*, 6 F.4th 255, 265 (2d Cir. 2021). Under that standard, "we will reverse only if we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *SEC v. Rajaratnam*, 918 F.3d 36, 41 (2d Cir. 2019) (internal quotation marks omitted).

As an initial matter, we note that much of O'Brien's briefing—before both the district court and this Court—violates his agreement with the SEC. He argues that his conduct did not violate the law and that the SEC's allegations are false. We do not consider these arguments and address only those that are not precluded by O'Brien's settlement agreement.

First, O'Brien claims that the district court erred by ordering disgorgement without first finding that disgorgement was appropriate. But the district court evaluated O'Brien's conduct as alleged in the complaint and determined that it violated the law, thus meriting disgorgement. *See* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement.").

Second, O'Brien argues that the district court miscalculated the disgorgement amount, which exceeded his net profits from the scheme. Disgorgement for violations of the Securities Act and the Securities Exchange Act is limited to "net profits from the wrongdoing, that is, the gain made upon any business or investment, when both the receipts and payments are taken into the account." *Liu v. SEC*, 591 U.S. 71, 83 (2020) (internal quotation marks omitted); *see also SEC v. Ahmed*, 72 F.4th 379, 396–97 (2d Cir. 2023) (holding that *Liu*'s analysis applies to

3

disgorgement under § 78u(d)(7)), *pet. for cert. filed*, No. 23-741 (S. Ct. Jan. 9, 2024), No. 23-987 (S. Ct. Mar. 11, 2024).   Courts must "deduct legitimate expenses" associated with the defendant's proceeds from his wrongdoing.   *Liu*, 591 U.S. at 91–92.   But the "amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013) (internal quotation marks omitted).   Once the SEC has established a reasonable approximation of the profits, the burden shifts to the defendant to show that the calculation is inaccurate.   *Id.* at 31–32.   "[S]o long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty."   *Id.* at 31 (internal quotation marks omitted).

The SEC reasonably approximated O'Brien's net profits through expert analysis.   Its expert reviewed O'Brien's trades, determined which of them constituted "coordinated trading" as alleged in the complaint, and calculated O'Brien's net gain from those trades.   He then reduced that figure to account for "legitimate expenses"—the commissions and fees that O'Brien paid to place those trades.

O'Brien failed to rebut that calculation.   Instead, he contested his liability, accused the SEC of engaging in a "witch hunt," Special App'x at 15, and presented an alternative calculation that the district court aptly deemed "mystifying," *id.* at 33.   Limiting disgorgement to his total taxable short-term capital gains during the relevant period would give him credit for losing money on trades unrelated to the scheme.   And excluding trades from one of his accounts based on his assertion that he could not execute trades quickly enough from that account to contribute to the scheme conflicted with his own testimony.   Finally, he presented no authority supporting a deduction for capital gains taxes.   Even if he had done so, his calculation of the taxes paid on

4

income earned during the scheme was mathematically unsound. For example, it included a large reduction for a capital loss incurred the year before the scheme began and double-counted another capital loss. The district court did not abuse its discretion in accepting the SEC's calculation of net profit and ordering disgorgement of that amount.

Third, O'Brien argues that the district court could not impose a third-tier penalty because the record did not show that O'Brien acted with scienter or that his trading harmed any investors. A district court may impose a third-tier penalty for a securities law violation when (1) "the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and (2) "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). The district court correctly determined that O'Brien's conduct satisfied both requirements.

The facts alleged in the complaint established that O'Brien's scienter was "palpable." Special App'x at 39. O'Brien concealed his conduct by using numerous accounts at different brokerage firms. He disregarded warnings from several firms that his conduct might violate the securities laws. And when those firms asked about his trading strategy, he lied. These facts sufficiently established that O'Brien's manipulative conduct was deliberate.

The facts also showed that O'Brien's conduct resulted in substantial losses to investors. His coordinated trades helped move the prices of securities up or down as he intended. O'Brien's counterparties who purchased or sold at these manipulated prices were thus harmed.

In short, the district court did not abuse its discretion in ordering the third-tier civil penalty.

\* \* \*

5

We have considered O'Brien's remaining arguments and find they lack merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court