12–1965-cv
Velez v. City of New York

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2012

(Argued: March 6, 2013      Decided: September 18, 2013)

Docket No. 12-1965-cv

————————

TOWANDA VELEZ, as personal representative of the Estate of Anthony Velez, deceased,

*Plaintiff-Appellant,*

— v. —

CITY OF NEW YORK, RUDOLPH HALL, AND MICHAEL RUGGIERO,

*Defendants-Appellees.*[*]

————————

B e f o r e:

LYNCH, LOHIER, and CARNEY, *Circuit Judges*.

————————

————————

[*] The Clerk of Court is respectfully directed to amend the caption to conform to that above.

Plaintiff-appellant Towanda Velez, representing the estate of her son, Anthony Velez, sued the City of New York and several named and unnamed police officers in the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*), alleging that the defendants were liable for her son's death. Anthony Velez was murdered after the defendant police officers searched an apartment based on a confidential tip from Velez. A jury found for the defendants. On appeal, plaintiff principally contends that the district court erred in instructing the jury that New York law required the plaintiff, as a prerequisite to liability, to establish a special relationship between the defendants and Velez. Because we find no error entitling plaintiff to a new trial, we affirm the judgment of the district court.

AFFIRMED.

———————

MICHAEL G. O'NEILL, ESQ., New York, New York, *for Plaintiff-Appellant*.

KATHY H. CHANG, Assistant Corporation Counsel (Larry A. Sonnenshein, Assistant Corporation Counsel, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York, *for Defendants-Appellees*.

———————

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-appellant Towanda Velez ("plaintiff"), representing the estate of her deceased son, Anthony Velez, brought this action against defendants-appellees the City of New York, and two New York City police officers, Rudolph Hall and Michael Ruggiero, in the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*), alleging that the defendants were liable for her son's death.[1]  Anthony Velez ("Velez") was shot and killed shortly after a team of officers acting under Ruggiero's supervision searched an apartment based on a confidential tip from Velez.  A jury found that the defendants were not liable for Velez's death.  On appeal, plaintiff contends that she is entitled to a new trial for two reasons.  First, plaintiff takes issue with the district court's jury instructions, which required the jury to find that Hall and/or Ruggiero had a "special relationship" with Velez in order to find them or the City liable for negligently causing Velez's death.  Plaintiff contends the instructions were erroneous because (1) a special relationship existed as a matter of law; (2) the special relationship rule is limited to cases of nonfeasance as opposed to

---

[1] Plaintiff originally sued a number of unnamed "John Doe" officers, but later voluntarily dismissed the action against all individual police officers other than Hall and Ruggiero.

3

misfeasance; and (3) the City could be found to have a "special relationship" with Velez based on the acts or knowledge of some combination of City agents, not limited to Hall and Ruggiero. Second, she asserts that the district court erred by dismissing plaintiff's state law negligent training claims against the City on the grounds that the officers were acting within the scope of their employment. Because we find no error entitling plaintiff to a new trial, we AFFIRM the judgment of the district court.

## BACKGROUND

I.     Underlying Events[2]

In 2002, after becoming acquainted with Officer Hall, Velez began working with the New York City Police Department as a confidential informant. Hall, who was Velez's secondary handler, sometimes received tips from Velez regarding criminal activity. Velez's tips were used to support search warrant applications until early 2004, when a state trial court judge deemed Velez unreliable. From that point, although Velez may no longer have been an official confidential informant, he continued to communicate with Hall, conveying

---

[2] We describe the trial evidence in the light most favorable to the jury's verdict. See Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 685 (2d Cir. 1998).

information concerning criminal activity.[3]

In February 2004, Velez contacted Hall regarding a criminal named "Sonny," and advised that he had seen drugs and weapons at Sonny's apartment. Velez asked Hall for the telephone number for Gunstoppers, a program that provides monetary awards to individuals who anonymously report information about guns.[4] Hall gave Velez the number, and advised his supervisor, Michael Ruggiero, that the department would receive a Gunstoppers tip. While Hall never revealed the source of the tip, Ruggiero had a "pretty good idea" that it had come from Velez.

Velez's Gunstoppers tip was referred to Ruggiero's unit. Ruggiero ran computer checks on the apartment location and found five active arrest warrants,

---

[3] The parties continue to dispute whether Velez remained a registered confidential informant or whether he was officially deactivated after being deemed unreliable. We need not resolve that disagreement. A duty to protect those who collaborate with police officers in the arrest or prosecution of criminals arises "once it reasonably appears that [the collaborators] are in danger due to their collaboration," Schuster v. City of New York, 5 N.Y.2d 75, 81 (1958), and does not turn on whether the collaborator was officially registered as a confidential informant.

[4] NYPD Rewards, http://www.nyc.gov/html/nypd/html/home/rewards.shtml (last visited Sept. 17, 2013).

including a parole warrant, for persons residing at that address. None of the warrants was for anyone named Sonny. Ruggiero explained to his team that they would proceed to the apartment and arrest any of the subjects of the arrest warrants, and debrief those persons later at the station house to determine whether any had information that might support a search warrant. No officers discussed Velez as the possible source of the tip.

When Ruggiero and the other officers arrived at the apartment, Velez unexpectedly appeared at the doorway. Although Ruggiero recognized Velez, he did not alert any of the other squad members of Velez's identity. Ruggiero instructed another officer to hold Velez in the hallway, while the rest of the squad entered the apartment, where they saw a woman and another man.[5] The woman gave the officers permission to search the rear bedroom, where they found a gun inside a dresser drawer, and drugs in plain view. Ruggiero arrested the woman and the man, who was the subject of the outstanding parole warrant. Sonny was not at the apartment.

---

[5] Ruggiero testified that a small child was also in the apartment at the time. Officers gave the child to a neighbor.

The officers did not arrest Velez, as he did not fit the description of anyone named in the arrest warrants. Shortly after officers arrived back at the precinct with the arrestees, Ruggiero learned that a man had been shot outside the entrance of the apartment. The victim, as it turned out, was Velez. When police arrived at the scene, Velez, who was still conscious, told officers that "Sonny shot me." Velez died several hours later.[6]

II.    Procedural History

Plaintiff, as representative of Velez's estate, subsequently initiated this lawsuit, asserting five causes of action under 42 U.S.C. § 1983 and New York state law, seeking to hold defendants liable for Velez's pain, suffering, and wrongful death. Plaintiff's theory of recovery was, in essence, that by failing to take Velez into custody at the same time that they arrested the other individuals in the apartment, the officers exposed Velez's identity as the source of the tip, and thus failed to protect him from the retribution that sometimes befalls those who act in concert with law enforcement officials. Specifically, plaintiff asserted a federal claim against the City of New York pursuant to Monell v. Department of Social

_____

[6] The record does not reflect that anyone was ever convicted of Velez's murder.

7

<u>Services</u>, 436 U.S. 658 (1978), based on the City's failure to provide adequate training and supervision to the individual defendants; a federal claim against the individual defendants based on their violation of Velez's substantive due process rights;[7] a state common law claim against all defendants for negligence resulting in "the pain, suffering, and wrongful death" of Velez; a claim against all defendants based on the alleged violation of Velez's rights under the New York State Constitution; and a state law negligence claim against the City based on its negligent training and supervision of the individual defendants.

The case proceeded to trial before a jury. At the close of the trial, the district court granted the City's verdict for judgment as a matter of law with respect to the <u>Monell</u> claim, the state constitutional claim, and the state law negligent training claim. On appeal, of those claims on which the district court entered judgment as a matter of law, plaintiff challenges only the dismissal of the

---

[7] Plaintiff alleged that the defendants violated Velez's constitutional rights by failing to protect him"based on both the existence of a special relationship between decedent and the defendants and the actions of the defendants in placing decedent in a 'state created danger.'" Joint Pretrial Order at 2, <u>Velez v. City of New York</u>, No. 04-CV-1775 (ENV) (MDG), 2012 WL 1237646 (E.D.N.Y. Apr. 12, 2012).

negligent training claim.[8]

The two remaining claims – a § 1983 claim, based on a substantive due process theory, and a state law negligence claim – were submitted to the jury. With respect to the state law negligence claim, the district court instructed the jury that in order to find negligence, the jury first had to determine whether the police officers owed a duty of care to Velez. As the district court explained:

> Generally, the police owe a duty to provide protection to the public at large, rather than any particular individual. There is an exception where there is a special relationship between the City and the injured party. . . . Under New York State law, this exception has four elements:
>
> First, that the City, through promises or actions, took on an affirmative duty with regard to Anthony Velez.
>
> Second, knowledge on the part of the officers that inaction could lead to harm to Anthony Velez.
>
> Third, some form of direct contact between the officers and Anthony Velez.
>
> Fourth, that Anthony Velez justifiably relied on the City's affirmative actions or promises.

---

[8] This challenge is properly before us. Where, as here, a party files a motion for a new trial, the time to file an appeal runs from the entry of the order disposing of that motion. See Fed. R. App. P. 4(a)(4)(A)(v).

> If the plaintiff fails to show any of these four elements,
> then you cannot find that the police owed a duty to
> protect him.

App'x 971. The jury returned a verdict for defendants on the negligence claim, expressly finding that plaintiff had failed to establish the second element of the special relationship test, namely, knowledge on the part of Hall and Ruggiero that their inaction could lead to harm to Velez.[9]

Plaintiff moved for a new trial pursuant to Federal Rule of Civil Procedure 59, contending, as relevant to this appeal, that the jury charge was erroneous and that the district court had improperly dismissed the state law negligent training claim before submission to the jury. As to the jury instructions, plaintiff contended that she was entitled to an "ordinary negligence" instruction, and that in any event, she was not required to prove a special relationship with respect to any particular City employee. The district court denied plaintiff's motion, Velez v. City of New York, No. 04-CV-1775 (ENV) (MDG), 2012 WL 1237646 (E.D.N.Y. Apr. 12, 2012), holding that plaintiff's ordinary negligence argument was "wholly without merit," and that the jury was properly instructed on the elements of the

---

[9] The jury also returned a verdict for defendants on plaintiff's substantive due process claim. Because plaintiff raises no challenge relevant to that aspect of the verdict, we do not discuss it further.

special relationship test.  Id. at *2.  The district court also noted that under New York law "the great weight of authority teaches that a negligent training claim is viable . . . *only* when the alleged wrongful conduct occurred outside the scope of employment."  Id. at *6 (emphasis in original).  This timely appeal followed.

**DISCUSSION**

I.     Standard of Review

In general "we review for abuse of discretion a district court's denial of a motion for a new trial pursuant to Rule 59," Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 128 (2d Cir. 2012), but where the basis of the Rule 59 motion is an erroneous jury instruction, we review the jury instructions de novo, see Cobb v. Pozzi, 363 F.3d 89, 112 (2d Cir. 2004); Gordon v. New York City Bd. of Educ., 232 F.3d 111, 115 (2d Cir. 2000).  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."  Gordon, 232 F.3d at 116 (internal quotation marks omitted).  An erroneous jury instruction requires a new trial, unless the error is harmless.  Rasanen v. Doe, — F.3d —, 2013 WL 3766538, at *5 (2d Cir. July 19, 2013).

"We review *de novo* a district court's decision to grant a Rule 50 motion for judgment as a matter of law," Cash v. County of Erie, 654 F.3d 324, 332 (2d Cir.

11

2011), applying the same standard as the district court, <u>see</u> <u>Zellner v. Summerlin</u>, 494 F.3d 344, 371 (2d Cir. 2007). The standard is a stringent one, and the movant may prevail only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

II. <u>Analysis</u>

A. <u>Jury Instructions</u>

On appeal, plaintiff primarily challenges the district court's jury instructions regarding the "special relationship" test, identifying three separate errors. First, plaintiff contends that because Velez had acted as a police informant, he had a special relationship with the officers as a matter of law. Second, she asserts that the special relationship test applies only in cases of nonfeasance, and that the police officers' actions that may have disclosed Velez as the source of the tip constituted misfeasance rather than nonfeasance. Third, plaintiff argues that it was error to require the jury, in order to return a negligence verdict against the City, to find that all of the elements of the special relationship test were proven as to one of the individual defendants. The arguments are all without merit.

12

A recent decision of the New York Court of Appeals clearly lays out the governing principles of New York law regarding the duties owed by municipalities and their employees, and in so doing, makes clear that the district court was correct to require the jury to find a special relationship in order for liability to attach. See Applewhite v. Accuhealth, Inc., — N.Y.3d —, 2013 N.Y. LEXIS 1672 (June 25, 2013).

When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is "whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose." Id. at *4. A municipality performs a governmental function when its acts are "undertaken for the protection and safety of the public pursuant to the general police powers." Sebastian v. State of New York, 93 N.Y.2d 790, 793 (1999) (internal quotation marks omitted). Providing police protection has long been recognized as a quintessential governmental function. See Valdez v. City of New York, 18 N.Y.3d 69, 75 (2011).

Where, as here, a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed

13

a "special duty" to the injured party.[10] Valdez, 18 N.Y.3d at 75. The core principle is that "to sustain liability against a municipality, the duty breached must be more than that owed the public generally." Id. (internal quotation marks and alteration omitted). The plaintiff bears the burden of proving a special relationship, and "where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity." Applewhite, 2013 N.Y. Lexis 1672, at *7.

To establish a special relationship beyond the duty that is owed to the public generally, four elements must be present:

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

[10] New York case law appears to use "special duty" and "special relationship" interchangeably. A special duty or relationship arises in "three situations: (1) the plaintiff belong[s] to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assume[s] a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality [takes] positive control of a known and dangerous safety condition." Applewhite, 2013 N.Y. LEXIS 1672, at *7 (internal citation omitted). Here, plaintiff's argument is premised on the second of those alternatives.

14

Id. at *16 (internal quotation marks and citations omitted).  The distinction between nonfeasance and misfeasance is "irrelevant to the . . . analysis,"id. at *7 n.1, and the existence of a special relationship is a question of fact that may be properly submitted to a jury, id. at *16-17.

1.     Special Relationship as a Matter of Law

The foregoing principles are fatal to plaintiff's contentions.  First, it is clear that under New York law, a special duty instruction was entirely appropriate in this case, and that the district court was under no obligation to declare the existence of a special relationship as a matter of law.  As Applewhite holds, whether a special relationship exists is ordinarily a jury question.  Id.  Although a municipality "owes a special duty to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of criminals," Schuster, 5 N.Y.2d at 80, such a duty attaches only "once it reasonably appears that [the collaborators] are in danger due to their collaboration," id at 81.  Thus, the fact that Velez had provided information to the police does not, by itself, establish the existence of a special duty; whether such a duty exists depends on the factors set out in Applewhite, including the officers' knowledge of a danger to Velez and reliance by him on police protection.  The evidence adduced at trial

15

did not compel the conclusion that a threat to Velez's life was reasonably

apparent, nor that any such threat had been reported to police officers. Thus, the

issue was properly submitted to the jury, and the jury specifically found that the

plaintiff had failed to prove that either Hall or Ruggiero "had knowledge that his

action or inaction could lead to harm to Anthony Velez." App'x 35-36.

### 2. Misfeasance vs. Nonfeasance

Second, Applewhite explicitly rejects plaintiff's contention that a special

relationship is required only in cases of nonfeasance, as opposed to misfeasance

on the part of public officials, 2013 N.Y. LEXIS 1672, at *7 n.1, and emphatically

states that a special duty is required whenever a plaintiff seeks to impose liability

for the negligent performance of governmental functions such as policing.[11] Id. at

*7. The district court's instructions on the definition of the requisite special duty,

---

[11] Under New York law, police officers, and by extension municipalities, may be liable in tort where the officers acting in the scope of their employment "commit[] an ordinary tort that anyone else might commit – for example, when the employee is negligent in driving a car or firing a gun." See Applewhite, 2013 N.Y. LEXIS 1672, at *19-20 (Smith, J., concurring). We have no occasion to consider the boundaries of police conduct that may constitute ordinary torts, but note that whether characterized as a failure to provide police protection to Velez, or as negligently allowing his murderer to infer Velez's identity, the tort alleged by plaintiff amounts to negligent performance of policing functions, and has no obvious analogue in a tort that "anyone else might commit," id.

see supra p. 9-10, exactly traced the elements specified by the New York Court of Appeals in Applewhite.

> 3. Knowledge on the Part of Velez or Hall

Third, on the facts of this case, the district court correctly instructed the jury that the elements of a special relationship had to be established as to Hall or Ruggiero in order for municipal liability to attach. Plaintiff is correct, in the abstract, that a municipality may acquire knowledge through any of its agents, and in some cases, the relevant knowledge may be acquired through a combination of agents, including nondefendants. See Sorichetti v. City of New York, 65 N.Y.2d 461, 469 (1985) (holding that second element of special relationship test may be satisfied through "police department[] knowledge"). In this case, however, Ruggiero and Hall were the only officers who had any knowledge of Velez's identity and of his role in the police operation at the subject apartment. Thus, the jury's finding that neither Hall nor Ruggiero knew that Velez was in danger is fatal to plaintiff's claim against the City.

Accordingly, we hold that there was no error in the jury instructions regarding the operation of the special relationship test, and plaintiff is not entitled to a new trial.

B.     Negligent Training Claim

Finally, plaintiff argues that the district court erred in dismissing her state law negligent training claim. On de novo review, we conclude that the claim fails as a matter of law. To maintain a claim against a municipal employer for the "negligent hiring, training, and retention" of a tortfeasor under New York law, a plaintiff must show that the employee acted "outside the scope of her employment." Gurevich v. City of New York, No. 06 Civ. 1646 (GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008) (internal quotation marks omitted) (collecting cases). If the employee acted within the scope of her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of *respondeat superior*. See Karoon v. N.Y.C. Transit Auth., 659 N.Y.S.2d 27, 29 (1st Dep't 1997). "This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the . . . adequacy of the training." Id. Plaintiff conceded that the defendants were acting within the scope of their employment, thus judgment as a matter of law was warranted on the negligent training claim.

**CONCLUSION**

For the foregoing reasons the judgment of the district court is AFFIRMED.