21-522-cv
T.B. v. Town of Hempstead Animal Shelter and Town of Hempstead

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of March, two thousand twenty-two.

PRESENT:
> PIERRE N. LEVAL,
> MICHAEL H. PARK,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

T.B., by his father and natural guardian,
DUSTIN BAIN,

*Plaintiff-Appellant*,

v.                                                    21-522

TOWN OF HEMPSTEAD ANIMAL SHELTER
and TOWN OF HEMPSTEAD,

*Defendants-Appellees.*[*]

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT | Adam J. Roth, Law Offices of Adam J. Roth, New York, NY. |
| FOR DEFENDANTS-APPELLEES | Joseph E. Macy and Daniel J. Evers, Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., Garden City, NY. |

_____

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Tomlinson, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

This diversity action stems from injuries sustained by Plaintiff T.B., a nine-year-old child, from a dog attack. Plaintiff's grandparents adopted the bulldog "Monte" from a Pennsylvanian animal-rescue organization, A Furr-Ever Home, Inc. ("Furr-Ever Home"). Rather than file suit against Furr-Ever Home, Plaintiff brought this action against two New York municipal entities— the Town of Hempstead and the Town of Hempstead Animal Shelter (the "Animal Shelter")— who had received Monte from his original owner before transferring him to Furr-Ever Home. Plaintiff asserted claims of negligence and strict liability against the Animal Shelter, arguing that the Animal Shelter contributed to his injury by failing to inform Plaintiff's grandparents or Furr-Ever Home that Monte had previously bit a child.

After the close of discovery, the district court granted summary judgment to Defendants on all claims. It held that Plaintiff could not hold the Animal Shelter liable under a theory of strict liability because it did not own Monte at the time of the incident. As to the negligence claim, the court concluded that Plaintiff failed to show that the Animal Shelter owed Plaintiff a duty of care aside from its general duty to the public. Plaintiff appealed, contending that the district court erred in dismissing his negligence claim. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review a district court's decision to grant summary judgment *de novo* . . . draw[ing] all factual inferences and resolv[ing] all ambiguities in favor of the non-moving party." *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020).

The parties first dispute whether a plaintiff injured by a domestic animal may sue a party other than the owner of the animal for negligence. Defendants claim that any such action must proceed under strict liability rather than ordinary principles of negligence. They rely on New York's rule that a plaintiff suing the *owner* of a domestic animal for harm caused by that animal may proceed only under a theory of strict liability. *See Bard v. Jahnke*, 6 N.Y.3d 592, 599 (2006).

Plaintiff is not limited to strict liability in pursuing claims against the Animal Shelter because it did not own Monte at the time of the incident. Defendants' reliance on *Bard* is misplaced, as New York courts have not extended its holding to claims against non-owners of domestic animals. To the contrary, New York has permitted negligence claims against various defendants who did not own the animal that injured the plaintiff. *See Hewitt v. Palmer Veterinary Clinic, PC*, 35 N.Y.3d 541, 549 (2020) (veterinary clinic); *Bernstein v. Penny Whistle Toys, Inc.*, 10 N.Y.3d 787, 788 (2008) (third-party defendant that allowed child to interact with dog); *see also Hewitt*, 35 N.Y.3d at 554 (Wilson, *J.*, concurring) (noting New York's "longstanding, settled precedent, undisturbed by *Bard*, [that] a person injured by an animal may, under ordinary rules of negligence, sue a person other than the animal's owner").

Nonetheless, the district court properly dismissed Plaintiff's negligence claim. In New York, a plaintiff asserting a negligence claim against a municipality "perform[ing] a governmental function," must "prov[e] that the municipality owed a 'special duty' to the injured party." *Velez v. City of New York*, 730 F.3d 128, 134–35 (2d Cir. 2013).[1] A plaintiff may establish a special duty by showing that "(1) [he] belonged to a class for whose benefit a statute was enacted; (2) the

---

[1] Plaintiff does not contest the district court's determination that he was required to show the existence of a special duty of care beyond the duty the Animal Shelter owed to the public at large. Thus, we assume for purposes of this appeal that a "special duty" framework applies to Plaintiff's negligence claim.

government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition." *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013).

Plaintiff relies on the third way of demonstrating a special duty, contending that the Animal Shelter "assumed positive direction and control in the face of a known, blatant and dangerous safety violation in harboring and transferring out Monte." Appellant's Br. at 13. Plaintiff argues that the Animal Shelter "had notice that Monte had vicious propensities because . . . Monte had previously bit a child, . . . was surrendered for euthanasia and . . . went after a shelter employee." *Id.* at 14. He thus contends that the Animal Shelter "affirmatively placed" him "in harm's way" by failing to notify either his grandparents or Furr-Ever Home about Monte's propensities. *Id.*

We reject this argument. For the Animal Shelter to have "assume[d] positive direction and control in the face of a known, blatant and dangerous safety violation," *McLean v. City of New York*, 12 N.Y.3d 194, 199 (2009) (citation omitted), it must have provided some "affirmative assurances of safety on which the injured plaintiff relie[d]," *Abraham v. City of New York*, 828 N.Y.S.2d 502, 508 (App. Div. 2007); *see also Smullen v. City of New York*, 28 N.Y.2d 66, 69, 72 (1971) (finding a municipality liable when the city inspector assured plaintiff that a trench was "pretty solid" and did not "need[] to be shored" before plaintiff descended into the trench and perished when it collapsed); *Zurich Am. Ins. Co. v. City of New York*, 111 N.Y.S.3d 38, 40–41 (App. Div. 2019) (holding that the city owed a special duty to the plaintiff when the fire department arrived at the scene, "assume[d] control over the ongoing fire, shut off the main water supply valve to the warehouse's sprinkler systems, then certified to warehouse employees that it was safe to reenter the building when in fact the fire was still at risk of rekindling"). Here, the Animal Shelter made no assurances to Plaintiff—or, for that matter, to Furr-Ever Home or Plaintiff's

4

grandparents—about Monte's temperament.[2] Plaintiff provided no facts demonstrating that he or his grandparents relied on any representations made by the Animal Shelter. We conclude that the district court properly dismissed Plaintiff's negligence claim because Plaintiff failed to establish that the Animal Shelter owed a special duty of care to him.[3]

We have considered the remainder of Plaintiff's arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] To the contrary, Furr-Ever Home signed an agreement when it took possession of Monte from the Animal Shelter that specified "that the Town Of Hempstead Animal Shelter makes no guarantees whatsoever as to [Monte's] . . . temperament, mental disposition or training." App'x at 97.

[3] We decline Plaintiff's request in the alternative to certify to the New York Court of Appeals the question of whether a municipal animal shelter can be held liable under an ordinary negligence framework. *See* 2d Cir. R. 27.2(a); *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) (explaining that this Court should not certify issues of state law where "sufficient precedents exist for us" to resolve the appeal (citation omitted)).

5