*SEC v. Vali Mgmt. Partners, et al.,*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of June, two thousand twenty-two.

PRESENT:
> **ROSEMARY S. POOLER,**
> **RICHARD C. WESLEY,**
> **MYRNA PÉREZ,**
>    *Circuit Judges.*

---

**United States Securities and Exchange Commission,**

   *Plaintiff-Appellee,*

  v.            No. 21-453

**Vali Management Partners, DBA Avalon FA LTD, Nathan Fayyer, and Sergey Pustelnik, AKA Serge Pustelnik,**

   *Defendants-Appellants.*\*

---

| FOR PLAINTIFF-APPELLEE: | KERRY J. DINGLE, Senior Litigation Counsel (Michael A. Conley, Acting General Counsel, Dominick V. Freda, Assistant General Counsel, *on the brief*), United States Securities |
|---|---|

---

\* The Clerk of the Court is respectfully directed to amend the caption as set forth above.

and Exchange Commission, Washington, DC.

**FOR DEFENDANTS-APPELLANTS:** JONATHAN S. FRANKLIN (David Kearns, *on the brief*), Norton Rose Fulbright US LLP, Washington, D.C.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court entered on February 9, 2021, is **AFFIRMED**.

Defendants-Appellants Vali Management Partners, DBA Avalon FA LTD ("Avalon"), Nathan Fayyer, and Sergey Pustelnik, AKA Serge Pustelnik (together, "Defendants") appeal a final judgment ordering each to pay $7.5 million in civil penalties following a jury verdict finding Defendants violated several anti-fraud and anti-manipulation provisions of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act").[1]

Defendants argue the district court erred in three ways: first, in its jury instructions on market manipulation; second, by admitting the testimony of the SEC's two expert witnesses, Terrence Hendershott and Neil Pearson, while excluding Defendants' rebuttal expert witness, Haim Bodek's, and third, in awarding excessive and improper civil penalties. We reject all three arguments, and accordingly affirm the district court's judgment.

---

[1] The jury found that each Defendant violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5(a), (c), 17 C.F.R. § 240.10b-5(a), (c), and Section 17(a)(1) and (3) of the Securities Act, 15 U.S.C. § 77q(a)(1), (3). The jury also found that Avalon and Fayyer violated Section 9(a)(2) of the Exchange Act, 15 U.S.C. § 78i(a)(2), (f), and that Fayyer and Pustelnik violated Section 20(e) of the Exchange Act, 15 U.S.C. §§ 78t(e), 78u(d)(1), (3), and Section 15(b) of the Securities Act, 15 U.S.C. §§ 77o(b), 77t(b), (d). Finally, the jury found that each Defendant was liable as a control person under Section 20(a) of Exchange Act, 15 U.S.C. § 78t(a).

I.  Jury Instruction

We review a claim of error in jury instructions de novo, viewing the challenged instruction in the context of the jury charge as a whole. *See Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Velez v. City of New York*, 730 F.3d 128, 134 (2d Cir. 2013) (internal quotation marks omitted). The party challenging a jury instruction bears the "burden of showing that [its]requested [change to the jury instruction] accurately represented the law in every respect." *United States v. Dove*, 916 F.2d 41, 45 (2d Cir. 1990) (internal quotation marks omitted).

The district court's jury instruction defining "manipulative act," included that "[i]n some cases, a defendant's 'scienter,' that is, a defendant's intent to manipulate the securities market, is all that distinguishes legitimate trading from manipulative trading." Joint App'x 811.

The word "manipulative" is "virtually a term of art when used in connection with securities markets," and "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976). In using the term "manipulation," there is "[n]o doubt" that "Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977); *see also Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999) ("The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."). We have therefore previously explained that "[o]pen-market transactions that are not inherently manipulative may constitute manipulative activity when

3

accompanied by manipulative intent." *Set Capital LLC v. Credit Suisse Grp., A.G.*, 996 F.3d 64, 77 (2d Cir. 2021). This is because "in some cases" — as here — "scienter is the only factor that distinguishes legitimate trading from improper manipulation." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007); *see also Koch v. SEC*, 793 F.3d 147, 153–54 (D.C. Cir. 2015), *cert. denied* 577 U.S. 1235 (2016) ("[I]ntent . . . is all that must accompany manipulative conduct to prove a violation of the Exchange Act and its implementing regulations."). The district court's instruction was thus consistent with our articulation of market manipulation, and accurately informed the jury on the law.[2] *See Velez*, 730 F.3d at 134.

Equally unavailing is Defendants' contention that the charged instruction was erroneous because it did not include that the SEC "must also show the injection of false information . . . result[ed] in artificial market impact." Special App'x 88. We have found certain open-market transactions "may constitute manipulative activity when accompanied by manipulative intent," but have not required a showing of artificial market impact resulting from the injection of false information before concluding certain acts are manipulative under federal securities laws. *Set Capital*, 996 F.3d at 77. Defendants have not met their burden of showing their requested language accurately represents the law in every respect. *See Dove*, 916 F.2d at 45.

---

[2] Defendants also contend that the instruction was erroneous because it allowed the jury to find Defendants liable solely on the "subjective hope" that the market would move in a particular direction. But the jury instruction permitted no such finding, for the charge clearly instructed that to find Defendants liable for manipulative acts under the Exchange Act, the Defendants must have engaged in an act that "sends a false pricing signal to the market or creates a false impression of supply and demand" with "scienter," or the "intent to deceive, manipulate, or defraud." Joint App'x 810, 813.

II.     Expert Testimony

We review Defendants' challenge to the admissibility of expert testimony under a "highly deferential" abuse of discretion standard, sustaining the district court's decision unless it is "manifestly erroneous." *Restivo v. Hessemann*, 846 F.3d 547, 575 (2d Cir. 2017) (internal quotation marks omitted). The abuse of discretion standard "applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). For expert testimony to be admissible, it must be "relevant" and "rest[] on a reliable foundation." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)); *see also* Fed. R. Evid. 702.[3] The party proffering the proposed expert evidence bears the burden of establishing its admissibility by a preponderance of the evidence. *Williams*, 506 F.3d at 160. Contentions that an expert's assumptions are unfounded or "gaps or inconsistencies in the reasoning leading to the expert's opinion go to the weight of the evidence, not to its admissibility." *Restivo*, 846 F.3d at 577 (alterations and internal quotation marks omitted).

The district court appropriately concluded that the SEC's expert witnesses' testimony was relevant and reliable, and thus admissible. *See SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 404–

---

[3] "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.

07 (S.D.N.Y. 2019). It specifically found that Hendershott's methodology was a "conservative construct with objectively-defined steps that can be applied by any expert to any body of trades," that it "spr[ang] directly from th[e] well-accepted description of the phenomenon of layering," and that it "falls comfortably within th[e] parameter" of "intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 405. It further found that Pearson's "analysis was objective, detailed, well-supported by reference to academic research, and thorough" and that he was "an expert in the field . . . and used a commonly employed method for identifying and analyzing trading strategies in that field." *Id*. at 406. Upon a review of the record, we do not find the district court committed any manifest error in admitting this testimony.

The district court found that the testimony of Defendants' expert witness, Haim Bodek, was "difficult to understand," that "substantial portions . . . [we]re unintelligible," and that "much of Bodek's report appears to be little more than the use of labels and jargon to confuse and to create an appearance of legitimacy." *Id*. at 416. In excluding his testimony, the district court concluded that Bodek's opinion "provides little or no analysis," that he had a "practice of making assertions without any analysis to support them," and that his opinions "which appear to lie at the heart of his analysis rest on faulty logic and would mislead the jury if admitted." *Id*. at 416–17. We might have reached a different conclusion if we were determining in the first instance whether to exclude the entirety of Bodek's testimony. But we cannot say that the district court abused its discretion or acted outside the range of permissible decisions in excluding Bodek's testimony. *See, e.g.*, *Restivo*, 846 F.3d at 575.

III. Civil Penalties

"[O]nce the district court has found federal securities law violations, it has broad equitable power to fashion appropriate remedies." *SEC v. Fowler*, 6 F.4th 255, 265 (2d Cir. 2021) (quoting *SEC v. Sourlis*, 851 F.3d 139, 146 (2d Cir. 2016)); *see also* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3); *SEC v. Rajaratnam*, 918 F.3d 36, 44–45 (2d Cir. 2019) (noting deterrence function of civil penalties). We review a choice of remedies for abuse of discretion and will not "second-guess" the district court where it "adequately explain[s]" how it decided to fashion its remedy. *Fowler*, 6 F.4th at 265. "Under this standard, we will reverse only if we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *Rajaratnam*, 918 F.3d at 41 (quoting *SEC v. Bankosky*, 716 F.3d 45, 47 (2d Cir. 2013) (per curiam)).

The relevant statutes set a maximum penalty "for each . . . violation" that involves "fraud, deceit, [or] manipulation," *see* 15 U.S.C. §§ 77t(d)(2)(C); 78u(d)(3)(B)(iii), but the term "'violation' is not defined by the statutory scheme," *Fowler*, 6 F.4th at 264. In instances where the "per-trade penalty would be so substantial that [the defendant] would not be reasonably capable of paying it," fashioning a remedy to count the number of violations other than by the number of trades to "best effectuate[] the purposes of the statute" is not an abuse of discretion. *Id.* at 264–65 (internal citations and quotation marks omitted) (affirming civil penalties assessed on a per-victim basis because the district court was able to identify conduct aimed at each individual victim); *see also SEC v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 288 n.7 (2d Cir. 2013) (finding no error in the district court's calculating each trade as a separate violation).

The district court acted well within its discretion in assessing civil penalties.[4]  *See id.*  The district court adequately explained how it calculated the number of violations and why it rejected other calculations, noting that a single penalty for each of the two charged manipulative trading schemes "would deliver grossly inadequate deterrence for the scope of [the Defendants'] illegal activity," and that counting each transaction or series of transactions as a violation would produce a "staggering penalty" "[i]n light of the millions of transactions at issue."  *SEC v. Lek Sec. Corp.*, — F. Supp. 3d —, No. 17-1789 (DLC), 2020 WL 1316911, at *6–9 (S.D.N.Y. Mar 20, 2020).

We have considered all of Defendants' remaining arguments and conclude they are without merit.   For the foregoing reasons, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] We also conclude that the district court did not abuse its discretion in entering an amended judgment excising the disgorgement award and increasing civil penalties to $7.5 million per defendant. The district court acted within this Court's mandate to determine whether its "judgment . . . is consistent with [*Liu v. SEC*, 140 S. Ct. 1936 (2020)], and, if appropriate, entry of an amended judgment."  Order, *SEC v. Vali Management Partners*, No. 20-1854, Dkt. 64 (2d Cir. Nov. 20, 2020); *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).